UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| APRILLE WILBORN,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>SHARON HUTTON, et al.,<br><br>　　　Defendants. | Case No. 3:23-CV-910-CCB-SJF |

## **OPINION AND ORDER**

Before the Court is Defendant Michigan City's Motion to Dismiss Plaintiff Aprille Wilborn's first amended complaint. (ECF 42). Based on the applicable law, facts, and arguments, the Motion to Dismiss for Failure to State a Claim is **GRANTED**.

**I.　Relevant Background**

In 2022, Plaintiff Aprille Wilborn ("Wilborn") was living in public housing in Michigan City, Indiana with her minor children. (ECF 35 at 2). Wilborn was a victim of identity theft and called the police to file a complaint. (*Id.*). Defendant Officer Jackson Laudeman ("Officer Laudeman"), a Michigan City Police Officer, spoke with Wilborn and "swore out a probable cause affidavit against her" which resulted in Wilborn being charged with fraud and arrested. (*Id.*). Wilborn, a black woman, contends that but for her race, Officer Laudeman "would not have alleged that she was engaged in fraud nor swore out a probable cause affidavit against her." (*Id.* at 3). As a result of the fraud charges, Wilborn was denied her "automatic renewal" right for her lease in Michigan City Public Housing. (*Id.* at 4).

On October 16, 2023, Wilborn filed a complaint against Sharon Hutton ("Hutton"), executive director of the Michigan City Housing Authority, and Officer Laudeman under 42 U.S.C. § 1983 for violating her Fourth and Fourteenth Amendment rights. (ECF 1). On April 29, 2024, Hutton filed a motion to stay. (ECF 22). Before the Court ruled on the motion to stay, Wilborn filed a motion for leave to file an amended complaint on June 15, 2024. (ECF 26). On August 23, 2024, the motion was granted in part and denied in part. (ECF 32). Wilborn filed an amended complaint on September 18, 2024, bringing claims against Hutton, Officer Laudeman, and Michigan City under Section 1983 for violating her Fourth and Fourteenth Amendment rights, malicious prosecution, and racial discrimination and harassment. (ECF 35). On October 31, 2024, Defendant Michigan City filed the instant motion to dismiss under Fed. R. Civ. P. 12(b)(6) asserting that Plaintiff's first amended complaint does not state a claim for which relief can be granted. (ECF 42).

## II.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). "[A] formulaic recitation of the elements of a cause of action," and "naked assertions" without supporting facts are inadequate. *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint therefore fails to state a claim if it does not "describe the

2

claim in sufficient detail to give the defendant fair notice of what the … claim is and the grounds upon which it rests [or] plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations omitted).

When meeting this threshold, however, complaints "do not need to contain elaborate factual recitations." *Sanjuan v. Am. Bd. Of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Rather, at the motion to dismiss stage, the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* A court cannot dismiss a complaint for failure to state a claim if, taking the facts pleaded as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. The court, however, is "not bound by a plaintiff's legal characterization of the facts or required to ignore facts set forth in the complaint that undermine a plaintiff's claim." *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 762–63 (N.D. Ill. 2011).

### III. ANALYSIS

Plaintiff brings claims against Michigan City under 42 U.S.C. Section 1983 for violations of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures and her Fourteenth Amendment right to due process. (ECF 35 at 8). She alleges in Count IV that "Defendant deprived Plaintiff of her constitutional right to be free from unlawful seizure and confinement." (*Id.* ¶ 42). In Count V, she also alleges that "Defendant Michigan City violated Plaintiff's constitutional rights, from an official municipal policy, pattern, practice, and unofficial custom, and because the municipality

3

was deliberately indifferent in a failure to train or supervise the officer." (*Id.* ¶ 46). Plaintiff incorrectly states in a footnote in her response that the only count at issue in the motion to dismiss is "Count V, the Monell count." (ECF 47 at 1). However, Michigan City's motion to dismiss addresses Counts IV and V, therefore, the Court will analyze both Count IV and Count V. (ECF 42 at 1). Section 1983 claims against local governments are *Monell* claims, so the Court will address both Count IV and Count V as *Monell* claims against Michigan City.

A plaintiff can sue local governments under Section 1983 when an official policy of that local government inflicts the injury that the government as an entity is allegedly responsible. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). Under Section 1983, a local government may be liable for monetary damages if the plaintiff can show that the unconstitutional act complained of is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). It is unclear "how frequently conduct must occur to impose *Monell* liability, 'except that it must be more than one instance.'" *Thomas*, 604 F.3d at 303 (citing *Cosby v. Ward,* 843 F.2d 967, 983 (7th Cir. 1988)).

It is possible for a single violation to suffice for "failure-to-train" liability, as is alleged here, "where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Flores v. City of S. Bend,* 997 F.3d 725, 731 (7th Cir. 2021). "To establish single-incident liability, a plaintiff must prove that municipal policymakers know that its

employees will confront a given situation and not train for it, and the need for training must be obvious without consideration of prior violations." *Id.* at 734-35 (internal citations omitted). The Seventh Circuit has made it clear that the single-incident theory is rare and reserved only for narrow circumstances "when a municipality fails to train its employees, who 'have no knowledge at all of the constitutional limits' that govern their conduct in situations they are certain to encounter." *Id.* at 735 (citing *Connick v. Thompson*, 563 U.S. 51, 64 (2011)).

Michigan City moves to dismiss the claims against it arguing that Plaintiff "alleges no facts from which it could be reasonably inferred that a policy or widespread practice of the City of Michigan City was the moving force behind a deprivation of her constitutional rights." (ECF 43 at 2). Michigan City alleges that "Plaintiff's minimal *Monell* allegations are simply boilerplate recitations of the elements of the claim, not factual allegations that would be entitled to the presumption of truth." (ECF 43 at 3). The Court agrees that Plaintiff does not allege sufficient facts to support a *Monell* claim against Michigan City.

Plaintiff merely asserts the unsupported conclusion "that Michigan City (through its policymakers)" (ECF 35 at 9) "violated Plaintiff's constitutional rights, from an official policy, pattern, practice, and unofficial custom, and because the municipality was deliberately indifferent in a failure to train or supervise the officer" (*Id.* at 8). Plaintiff then argues that "[t]he fact that Ms. Wilborn has averred a racially motivated false arrest and that a policy, custom, and practice damaged her, represents that she has pled satisfactorily." (ECF 47 at 3). The Court will first address Plaintiff's allegation that

5

Michigan City violated her constitutional rights because of an official policy, pattern, practice, and unofficial custom, then it will analyze the argument that Michigan City was deliberately indifferent in failing to train or supervise Officer Laudeman. (ECF 35 at 8).

It is unclear which type of municipal action Plaintiff is relying on for her claims that Michigan City offended her constitutional rights due to an official or unofficial policy, pattern, or practice. By stating "through its policymakers," Plaintiff seems to be averring that the alleged constitutional violations were caused by an official with final policymaking authority. When challenged by Michigan City's motion to dismiss, Plaintiff argued that, at this stage, she does not need to "name the policy or the policymaker" in question and that there is "no law that stops [her] from averring that a policy, custom, and practice drove the officer's lack of dignity treatment [sic] of [her] followed by the arrest of her person that Laudeman caused by his false statements." (ECF 47 at 4). Plaintiff is correct that no law bars her from making these allegations, but these naked assertions are inadequate to support a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

A Section 1983 plaintiff cannot rely on a *respondeat superior* theory to state a claim because there is no general supervisory liability under Section 1983. *Monell*, 436 U.S. at 691; *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Instead, a plaintiff must "present evidence that the defendants violated the Constitution through their own conduct," which Plaintiff did not do. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022); *see George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or

6

participate in the violations are responsible."). Plaintiff did not connect her claims to any official with policymaking authority, final or otherwise. She only stated in a parenthetical that Michigan City's policymakers are responsible for unlawful seizures in violation of the Fourth Amendment. (ECF 35 at 9). Thus, Plaintiff's claims that the alleged constitutional violations were caused by an official with final policymaking authority do not cross the line from conceivable into plausible. *Twombly*, 550 U.S. at 555, 570.

Plaintiff's assertions that an official policy or a widespread and well-settled governmental practice was responsible for the alleged constitutional violations are also too attenuated to survive a motion to dismiss. As noted by Michigan City, Seventh Circuit precedent demands that the *Monell* requirements be scrupulously applied at the pleadings stage. (ECF 48 at 3) (citing *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023)). This means Plaintiff must allege facts permitting a reasonable inference "that the practice is widespread and that the specific violations complained of were not isolated incidents," but are "systemic in nature." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017); *Powe v. City of Chicago*, 664 F.2d 639, 651 (7th Cir. 1981). Plaintiff alleges that "Michigan City (through its policymakers) engages in a pattern and practice of unlawful seizures in violation of the 4th Amendment and those seized are disproportionately black\African American." (ECF 35 at 9).

Plaintiff did attempt to establish the minimal facts required for a reasonable inference of an unconstitutional policy or practice when she included the allegation that there are a disproportionate number of black individuals seized by the Michigan City

7

Police Department. (*Id.*). However, while the type of information Plaintiff provided "could furnish the necessary foundation to allege a pattern of conduct or a series of acts," the generalized allegation levied by Plaintiff does "not meet even the low pleading threshold established in federal courts." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). As noted by the court in *Strauss*, "[a]t the very least [Plaintiff] 'would need to identify as well what it was that made those prior arrests * * * illegal and to show that a similar illegality was involved in [her] case.'" *Id.* (citing *Ekergren v. City of Chicago,* 538 F. Supp. 770, 773 (N.D.Ill.1982)). A general description of the actions of Officer Laudeman alone cannot sustain a *Monell* claim. *Gill*, 850 F.3d 335 at 344; *see also Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021) (holding that even allegations including "a few sporadic examples of an improper behavior" will not suffice.) Plaintiff has not pled sufficient factual matter to state a claim to relief that is plausible on its face against Michigan City for alleged violations of her constitutional rights because of an official policy, pattern, practice or unofficial custom. *Iqbal,* 556 U.S. at 678.

The Court will now address Plaintiff's argument that Michigan City was deliberately indifferent in failing to train or supervise Officer Laudeman. (ECF 35 at 8). As mentioned above; to establish single-incident liability, Plaintiff must allege facts that support a plausible claim that Michigan City failed to train its employees who "have no knowledge at all of the constitutional limits' that govern their conduct in situations they are certain to encounter." *Flores,* 997 F.3d at 735. "Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our

8

prior cases—can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

All Plaintiff alleges is the conclusion that "the municipality was deliberately indifferent in a failure to train or supervise the officer." (ECF 35 at 8). She does not allege enough facts to support the claim that Michigan City Police Department officers had "no knowledge at all of the constitutional limits" in responding to a civilian complaint and drafting a report and affidavit. *Flores*, 997 F.3d at 735. Nor does she allege facts to show that the failure to train Officer Laudeman was a deliberate or conscious choice by Michigan City. Even if Plaintiff were to argue that Officer Laudeman was not trained enough, it is not enough to show that an injury could have been avoided if a specific officer received more or even better training "sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391. To hold otherwise would allow liability to attach to municipalities under a lesser standard of fault and causation, resulting in "*de facto respondeat superior* liability, a result rejected in *Monell*." *Canton*, 489 U.S. at 379.

Plaintiff does not plead sufficient facts to permit the reasonable inference that the alleged policies or practices are so widespread as to constitute a "governmental custom," nor does she meet the pleading threshold under either of the other two types of municipal action that supports *Monell* liability. *Gill*, 850 F.3d 335 at 344. Plaintiff also does not meet the pleading threshold for a failure-to-train single-incident theory. Thus, Michigan City's motion to dismiss must be **GRANTED** and Counts IV and V are dismissed without prejudice.

**IV.   CONCLUSION**

For the reasons discussed above, Defendant's Motion to Dismiss is **GRANTED.** (ECF 42). Count IV is dismissed, without prejudice, as to Michigan City but remains as to Officer Laudeman. Count V is dismissed without prejudice. Plaintiff may file a second amended complaint by **August 1, 2025,** if she believes she can state a plausible *Monell* claim based on the alleged events, consistent with the allegations she made in the first amended complaint. Further, if Plaintiff chooses to file a second amended complaint, the second amended complaint must comply with the Court's order filed on August 23, 2024, meaning counts that were dismissed with prejudice should not be included. (ECF 32).

SO ORDERED on July 14, 2025.

                                                     /s/*Cristal C. Brisco*
                                                    CRISTAL C. BRISCO, JUDGE
                                                    UNITED STATES DISTRICT COURT